IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RICHARD LOUIS FUMI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | Case No. 10-CV-769-TCK-PJC |
| **BOARD OF COUNTY COMMISSIONERS** ) | |
| **OF ROGERS COUNTY, a political** ) | |
| **subdivision and municipal corporation, and** ) | |
| **JOE HORNER, an individual and in his** ) | |
| **official capacity,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. 11) and Defendants' Motion for Summary Judgment (Doc. 12).

**I.    Background**

On March 4, 2010, at approximately 7:56 p.m., a motorist in Rogers County, Oklahoma called 911 to report that a white Chevrolet pickup truck, later determined to be driven by Plaintiff, was swerving on State Highway 20 and traveling in the eastbound lane of traffic while heading westbound. The call was relayed to the Rogers County Sheriff's Office, and Defendant Sergeant Joe Horner ("Sergeant Horner") was dispatched to investigate the call. Sergeant Horner approached the location of the suspect vehicle with his emergency lights activated on his patrol unit. As he approached Keetonville Hill on Highway 20, Sergeant Horner viewed approximately twenty vehicles with their brake lights activated and three vehicles pulled over on the shoulder of the road. Upon reaching the top of the hill, he observed a truck matching the description of the one in the 911 call. According to Sergeant Horner, "the vehicle was driving erratically, crossing the center dividing line and forcing oncoming drivers to the shoulder of the roadway." (Horner Incident Report, Ex.

3 to Defs.' Mot. for Summ. J., at D.11.) Sergeant Horner followed the vehicle from a distance of approximately sixty feet with his emergency lights and siren activated. Plaintiff did not pull over, and Sergeant Horner notified Rogers County dispatchers that he was in pursuit of the vehicle. He was then advised by dispatchers that Owasso Police Department officers were setting up stop sticks west of the location in order to disable the suspect vehicle.

The pursuit continued for a short distance when Sergeant Horner noticed that he had been joined by Lieutenant Robert Norman ("Lieutenant Norman") of the Rogers County Sheriff's Office. Shortly after the vehicles reached a four-lane section of the roadway, Sergeant Horner and Lieutenant Norman placed their vehicles on either side of the suspect vehicle. The spotlights from both police cars were shining in the suspect vehicle's back window and side mirror. The pursuit continued with the vehicles in this position for approximately two more miles. During said time, the maximum speed of the vehicles was approximately forty-five miles per hour. Sergeant Horner observed the suspect vehicle make contact with the curb of the highway several times during the pursuit and also observed the vehicle cross over lanes of traffic and travel in the eastbound lane. The pursuit continued to a location approximately sixty yards west of the intersection of Highway 20 and 177th East Avenue, when the suspect vehicle came to a stop.

After the truck came to a stop, Sergeant Horner and Lieutenant Norman exited their patrol units and approached the driver side of the vehicle with their guns drawn. Sergeant Horner then opened the door of the vehicle and observed Plaintiff sitting with both hands placed on the steering wheel. Sergeant Horner and Lieutenant Norman shouted verbal commands at Plaintiff, directing him to get out of the truck. According to Sergeant Horner, Plaintiff turned his head in their direction and gave no indication that he was going to exit the vehicle. Lieutenant Norman's Report

2

additionally states that Plaintiff was mumbling something at this point in time. (Norman Supplement to Incident Report, Ex. 3 to Defs.' Mot. for Summ. J., at D-14.) Sergeant Horner and Lieutenant Norman then proceeded to physically remove Plaintiff from the vehicle. Plaintiff was placed prone on the ground, restrained in handcuffs, and was searched for weapons.

During his deposition, Plaintiff, who suffers from Type 2 diabetes, testified that he had no memory of driving his truck, being pursued by Sergeant Horner and Lieutenant Norman, or being directed to get out of the truck. Plaintiff stated that he recalled eating dinner, checking his insulin levels, talking to his daughter, watching television, and that the next thing he remembered was being face down on the pavement. (*See* Pl.'s Depo., Ex. 4 to Defs.' Mot. for Summ. J., at 29:13-18; 32:5-7.) Plaintiff testified that he remembered someone's foot or leg on his back, and that his head "was being pushed into the cement." (*Id.* at 32:24-25 - 33:1.) Plaintiff also testified that he said "I am a diabetic" and "I am not understanding you" when he was on the ground but that he did not recall anyone responding to his statements. (*Id.* at 33:1-4.) Plaintiff testified that his left arm was then put behind his back, he could feel something go over his wrist, and his "right arm was grabbed, twisted, and was continually being twisted and brought behind [his] back when [the officers] pulled it up in the middle of [his] shoulder blade." (*Id.* at 33:6-10.) According to Plaintiff, he then "heard a snap . . . and screamed 'Oh my God.'" (*Id.* at 33:11-12.) Plaintiff also testified that the officers "punched [him] on the side of his face." (*Id.* at 52:23-24.) When asked who punched him, however, Plaintiff stated that he didn't know and that the only reason he thought he was punched was because he had abrasions on his face. (*Id.* at 53:1-3.)

After Plaintiff was restrained in handcuffs, Lieutenant Norman searched Plaintiff's truck and found a diabetic testing kit and a bottle of Lortab in the compartment above the glove box.[1] According to Sergeant Horner, the discovery of these items "made [the officers] aware that the behavior [Plaintiff] was displaying was possibility a medical condition rather than intoxication." (Horner Incident Report, Ex. 3 to Defs.' Mot. for Summ. J., at D.12.) Plaintiff was helped from the ground and placed on the tailgate of the truck. The officers talked with Plaintiff and did not notice an odor of alcohol on his breath. Lieutenant Norman then contacted dispatchers and requested Emergency Medical Services ("EMS") be sent to the location. When EMS arrived, Plaintiff's blood levels were checked, and the initial blood sugar reading was 35. Plaintiff testified that this is the lowest his blood sugar has ever been and that his normal blood sugar level is approximately 150. Plaintiff was placed in an ambulance and transported to a hospital for treatment.

Sergeant Horner followed the ambulance to the hospital to return Plaintiff's personal property and draft traffic citations. Sergeant Horner informed Plaintiff that due to his medical condition, he would not be charged with felony attempting to elude, but would instead be cited for certain traffic violations, including failure to yield for emergency vehicle, left of center, failure to illuminate vehicle, and failure to carry security verification form. Plaintiff apologized to Sergeant Horner. Sergeant Horner inquired if Plaintiff had family that could give him a ride home from the hospital upon his release. Plaintiff informed Sergeant Horner that his wife was out of town and he didn't remember any other family member's phone numbers. Because Plaintiff was able to recall

---

[1] In Plaintiff's deposition, he testified that "the police officer" said his diabetic testing kit was located on the center console of the truck. However, Lieutenant Norman's supplement to the Incident Report indicates that he found the kit on the passenger floorboard. The Court finds this disputed fact of little significance, however, since the diabetic testing kit was located *after* the key events giving rise to Plaintiff's claims – namely, the removal and restraint of Plaintiff.

4

his wife's phone number, Sergeant Horner called her on his cell phone, explained to her what had occurred and gave Plaintiff the phone. After ending the call, Plaintiff told Sergeant Warner that his wife would contact his son to come to the hospital. Sergeant Horner then left the hospital after Plaintiff's son and daughter-in-law arrived.

While at the hospital, Plaintiff was treated for his abnormal blood sugar level and for abrasions above each brow and on the bridge of his nose. (*See* Emergency Documentation, Ex. 5 to Defs.' Mot. for Summ. J.) It was also determined from an X-ray that Plaintiff's right elbow was broken. Plaintiff testified that he had previously broken his right elbow in June 2009. Subsequent to these events, Plaintiff pled no contest to the citations for failure to yield for emergency vehicle, left of center, and failure to illuminate vehicle.[2]

Plaintiff thereafter brought suit against Sergeant Horner and the Board of County Commissioners of Rogers County ("Board") (collectively "Defendants"), alleging the following claims: (1) excessive force pursuant to 42 U.S.C. § 1983 ("Section 1983") (against Sergeant Horner); (2) battery (against both Defendants); (3) negligence (against Board); (4) false/negligent arrest (against both Defendants); and (5) false imprisonment.[3]

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite*

---

[2] The failure to carry security verification form citation was resolved after Plaintiff provided his insurance verification on a later date.

[3] Plaintiff's Petition does not clearly indicate whether the false imprisonment claim is asserted against both Defendants or just one Defendant.

*Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986). The relevant legal standard does not change where the parties file cross motions for summary judgment, and each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

### III. Discussion

Defendants have moved for summary judgment on all Plaintiff's claims. Plaintiff moves for summary judgment on his excessive force claim.

#### A. Excessive Force Claim

Plaintiff's Petition alleges that Sergeant Horner used excessive force in violation of Section 1983 when Sergeant Horner forced Plaintiff out of the vehicle and put him on the ground. Sergeant Horner moves for summary judgment, arguing that he is entitled to qualified immunity from suit. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power

6

irresponsibly and the need to shield officials from harassment, distractions, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Pearson*, 555 U.S. at 232); *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) (noting that "the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity"). In *Pearson*, the Supreme Court held that the court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Plaintiff's excessive force claim is based on the allegations that Sergeant Horner punched Plaintiff, pressed Plaintiff into the concrete, and broke Plaintiff's elbow when he handcuffed Plaintiff. A "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 388 (1989).

As the Supreme Court explained in *Graham*, "[b]ecause [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. In determining reasonableness, a court must ask "whether the officers' actions are

7

'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (internal citations omitted). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[.]" *Id.* at 396. Further, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Applying this standard to Plaintiff's allegations of excessive force, the Court finds that summary judgment in favor of Sergeant Horner is proper. First, as to Plaintiff's contention that he was punched, the only evidence in the record regarding an alleged punch is Plaintiff's deposition testimony, which does not create a genuine issue of fact. Plaintiff testified that he did not have a memory of being punched and could not identify who allegedly punched him, but merely assumed that he had been punched because of the bruises on his face. The Court finds that without additional evidence showing that Plaintiff was punched, this speculative and conclusory testimony is insufficient to create a genuine issue of fact on Plaintiff's excessive force claim. *See Bouchard v. Whetstone*, 772 F. Supp. 2d 1352, 1355 (D. Colo. 2011) ("[C]onclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.") (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

Second, with regard to Plaintiff's allegation that Sergeant Horner used excessive force in removing Plaintiff from the truck, forcing him to the ground, and handcuffing him, the Court finds that Plaintiff has not shown that Sergeant Horner used greater force than would have been reasonably necessary to effect a lawful seizure. Given Plaintiff's erratic driving and failure to pull

8

over once the officers began pursuing him, Sergeant Horner had reason to fear for his safety and that of the public. Specifically, Sergeant Horner observed Plaintiff cross lanes of traffic, bump off the curb of the highway, and generally drive in a manner that could have easily resulted in a fatal automobile accident. Sergeant Horner pursued Plaintiff for more than two miles – with his siren, spot-light, and overhead lights activated – without any response from Plaintiff. It was therefore reasonable for Sergeant Horner to assume that Plaintiff was actively evading the officers in an attempt to avoid arrest and was a threat to others.

Further, this threat was not negated once the truck came to a stop and the officers opened the truck door. Although the officers were able to see Plaintiff's hands on the steering wheel at this point in time, this fact did not immediately negate the threat posed by Plaintiff, as the placement of Plaintiff's hands, coupled with Plaintiff's failure to respond to the officers' commands, could have suggested that Plaintiff was going to attempt to again drive away from the officers. It was also unclear at this point in time whether Plaintiff was under the influence of drugs and/or alcohol or whether he was in close proximity to a weapon that could be used against the officers. It was therefore objectively reasonable for Sergeant Horner to believe that Plaintiff posed a danger – to him, Lieutenant Norman, and the public – at the point in time when he removed Plaintiff from the truck, put Plaintiff on the ground, and restrained him with handcuffs. Although Plaintiff maintains that these actions resulted in injuries to Plaintiff – namely, bruises and abrasions on his face and a broken elbow – the Court does not find that the manner of handcuffing renders the application of force excessive. Taking Plaintiff's recitation of the facts as true, Sergeant Horner pushed Plaintiff's head into the cement, restrained Plaintiff with a foot or leg on his back, grabbed his arms, and twisted them behind his back to secure handcuffs. While these actions were clearly done forcefully,

9

the Court is unwilling to find them excessive or unreasonable given the threat that Plaintiff posed at the time. *See Jackson v. City of Bremerton*, 268 F.3d 646, 650–53 (9th Cir. 2001) (finding no excessive force where plaintiff suffered a fractured finger after officer pushed plaintiff to the ground for purpose of handcuffing her despite being told of preexisting back and shoulder injuries, and where plaintiff had earlier posed a threat to officers' safety and ability to control a crowd). Accordingly, because the Court finds that Sergeant Horner was acting in an objectively reasonable manner, there was no constitutional violation and Sergeant Horner is therefore shielded by qualified immunity.

**B.     Battery Claim**

Plaintiff's Petition alleges a battery claim against both Sergeant Horner and the Board. Under Oklahoma law, an individual is liable for battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Brown v. Ford*, 905 P.2d 223, 229 n. 34 (Okla. 1995), *overruled on other grounds by Smith v. Pioneer Masonry, Inc.*, 226 P.3d 687 (Okla. 2009). If Sergeant Horner is not found liable for battery, the Board is similarly not subject to suit on such a claim. *See Berglund v. Pottawatomie Cnty. Bd. of Cnty. Comm'rs*, No. 09-6000, 2009 WL 3381799, at *9 (10th Cir. Oct. 22, 2009) (finding Board of County Commissioners of Pottawatomie County was entitled to summary judgment on claim that it was liable for certain torts committed by police officers in scope of their employment because officers did not engage in tortious conduct).

Plaintiff first contends that Sergeant Horner made "harmful and offensive contact" with him that was "intentional and malicious and without lawful cause or consent of the Plaintiff." (Pet. ¶ 15-

10

16.) Plaintiff alternatively contends that Sergeant Horner's conduct "was incidental to his employment with [Board], and as such, his conduct is imputable to [Board]." (*Id.* ¶ 7.) The Court finds summary judgment proper as to Plaintiff's battery claim against both Defendants. Pursuant to Okla. Stat. tit. 21, § 643(1), an action for assault and battery will not lie "[w]hen necessarily committed by a public officer in the performance of any legal duty, or by any other person assisting such officer of acting by such officer's direction." Therefore, Oklahoma law "require[s] a showing that the use of force was 'necessarily committed.'" *Thetford v. Hoehner*, 05-CV-0405-CVE-FHM, 2006 WL 964754, at *6 (N.D. Okla. April 12, 2006). For the reasons outlined above, *see supra* Section III.A., Sergeant Horner's use of force was reasonable under the circumstances, and the Court finds that it was "necessarily committed" in the performance of his legal duty. Both Defendants are therefore entitled to summary judgment on Plaintiff's battery claim. *See Berglund*, 2009 WL 3381799, at *9; *Burns v. Holcombe*, No. 09-CV-152-JHP, 2010 WL 2756954, at *13 (E.D. Okla. July 12, 2010) (noting that "a determination of whether the officers were acting lawfully in arresting the [p]laintiff is necessary in order to determine whether an action for assault and battery is precluded" by Okla. Stat. tit. 21, § 643(1)). *Cf. Thetford*, 2006 WL 964754 at *6 (declining to apply exception of Okla. Stat. tit. 21, § 643(1) and denying summary judgment as to assault and battery claim against police officer when court found genuine issues of material fact relating to reasonableness of officer's use of force).

### C. Negligence Claim

Plaintiff's negligence claim alleges that Board "negligently trained and supervised its employees, including [Sergeant] Horner, such that they were ill equipped, and unlawfully inept to perform their necessary job duties in a reasonable fashion." (Pet. ¶ 21.) Defendants argue this claim

is subject to summary judgment pursuant to the discretionary function exemption of the Government Tort Claims Act ("GTCA"). Plaintiff's fails to address this exemption and instead summarily argues that "the clear inference is that Rogers County Officers have *carte blance* during a traffic stop[,] [which] reflects squarely on the training or lack thereof." (Pl.'s Resp. to Defs.' Mot. for Summ. J. 9.)

The Court finds Defendants' position well founded. Pursuant to the discretionary function exemption, "[t]he state or a political subdivision shall not be liable if a loss or claim results from . . . [p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." Okla. Stat. tit. 51, § 155(5). Courts have applied this exemption to negligent hiring, supervision, and training claims, finding that "[t]he language of the GTCA as well as recent case law construing these provisions makes clear the state and/or a political subdivision is not subject to suit for discretionary acts such as hiring, supervising, and training employees, as well as enforcement of adoption of rules or policies." *Burns*, 2010 WL 2756954 at *15 (granting summary judgment as to claim based on negligent training and supervision of police officers against Seminole Board of County Commissioners because such claim was precluded pursuant to the discretionary function exemption of the GTCA) (citing *Elizabeth S. v. Okla. City Pub. Sch.*, No. CIV-08-105-M, 2008 WL 4147572, at *5 (W.D. Okla. Sept. 3, 2008) and *Ochoa v. Taylor*, 635 P.2d 604, 608-09 (Okla. 1981)). Because, like the claim at issue in *Burns*, Plaintiff's negligence claim is based on the Board's discretionary acts of training and supervising police officers, the Court finds such claim is subject to summary judgment pursuant to the discretionary function exemption of the GTCA.

Further, even if the discretionary function exemption did not apply, Plaintiff has failed to provide any evidence to support his allegation that Sergeant Horner was ill equipped to perform his job duties in a reasonable fashion. As this Court outlined above, Sergeant Horner's actions were objectively reasonable given the circumstances. *See supra* Section III.A. Plaintiff has additionally failed to provide any evidence regarding the training and supervision of Sergeant Horner and has therefore failed to "set forth specific facts showing that there is a genuine issue for trial" as to his negligence claim. Fed. R. Civ. P. 56(e). Defendants' Motion for Summary Judgment is therefore granted as to Plaintiff's negligence claim against Board.

**D. False Arrest / False Imprisonment Claims**

Plaintiff's Petition alleges "that [Board] negligently and falsely arrested and/or imprisoned Plaintiff by detaining and seizing him" and that Sergeant Horner's conduct "was incidental to his employment with [Board]" or alternatively, "intentional and outside the scope of employment[.]" (Pet. ¶ 25.) Under Oklahoma law, an action for false imprisonment is based upon detention that is "purely a matter between private persons for a private end, and there is no intention of bringing the person detained before a court, or of otherwise securing the administration of the law." *Roberts v. Goodner's Wholesale Foods, Inc.*, 50 P.3d 1149, 1151 n.3 (Okla. Civ. App. 2002). Because the facts of this case do not involve a matter between private persons for a private end, the Court assumes that Plaintiff's claim is, in fact, a claim for false arrest. *See Thetford*, 2006 WL 964754, at *6 (making same assumption when plaintiff brought claim of false imprisonment against police officers).

To succeed on a claim for false arrest, which constitutes "an arrest without proper legal authority," the plaintiff must demonstrate lack of probable cause to arrest. *Roberts*, 50 P.3d at 1151-52. Plaintiff's sole argument in support of this claim is that "the detention was unlawful because

13

it was excessive and unnecessary" and "ample evidence exists from which a jury can conclude that the arrest lacked probable cause and was false." (Pl.'s Resp. to Defs.' Mot. for Summ. J. 8.) Such conclusory allegations are insufficient to withstand summary judgment. First, Plaintiff fails to provide any argument or evidentiary support for the contention that his detention amounted to an "arrest." Second, Plaintiff fails to provide any argument or evidentiary support that Sergeant Horner acted without probable cause. Given the events leading up to Plaintiff's detention – namely, Plaintiff's erratic driving and failure to pull over and respond to the officers' commands – Sergeant Horner clearly acted with probable cause in pulling Defendant over and briefing detaining him. The Court therefore grants summary judgment as to Plaintiff's false arrest and false imprisonment claims.

**IV.    Conclusion**

For the reasons discussed herein, Plaintiff's Motion for Partial Summary Judgment (Doc. 11) is DENIED, and Defendants' Motion for Summary Judgment (Doc. 12) is GRANTED. A separate Judgment will be entered forthwith.

**IT IS SO ORDERED this 3rd day of October, 2011.**

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**